Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning to everyone who's joining us today. I am pleased to be sitting this week with my colleagues Judge Britt Grant and Judge Gerald Joflat. We're pleased to be here with you today, albeit on Zoom, and I remain hopeful that this is one of the final weeks of this court holding oral argument in this way. We are returning to in-person oral arguments soon, and that will be a relief for everyone, I'm sure. Mr. Brian Robinson is our courtroom deputy and timekeeper, and I know a lot of you have done this by Zoom before, but for any of those of you who have not, we operate on this traffic light system. Your time remaining will first appear in green. When you get down to two minutes, it will appear in yellow, and it will turn red when you have reached the end of your allotted time, and at that point, please do a quick wrap-up of where you are, a sentence or two. We have three cases on our oral argument calendar today, and I will now call the court to order. We have Lynn Palmer Bailey for the appellant and Holly Gershaw for the appellee, and Ms. Bailey, I see that you have reserved six minutes for rebuttal. Are you ready to proceed? Yes, Your Honor. Please begin. Good morning. Lynn Bailey from the Federal Defender's Office in Jacksonville, Florida, on behalf of Jerome Stancil. May it please the court. Mr. Stancil was sentenced under the Armed Career Criminal Act based on his previous conviction for a Virginia offense that prohibits conduct as simple as two friends sitting around in the privacy of their own home with a personal use amount of drugs, where one person gives a little bit to his friend to use. No money is exchanged, nor is there any expectation of future transactions. No one has left the home, let alone enter the dangerous drug marketplace. Simply put, this conduct does not manufacturing, distributing, or possession with intent to manufacture or distribute, and therefore it does not qualify as a serious drug offense under the ACCA. Several tools of statutory construction compel this result. First, we cannot overlook the fact that we are interpreting the term serious drug offense. Congress included the adjective serious to describe the types of drug offenses it wanted to capture as ACCA predicates. The other offenses Congress wanted to capture were, of course, violent felonies. And if we look to Curtis Johnson, we note that the Supreme Court had to determine what the violent felony meant. And to determine that, they had to interpret the phrase physical force. When the Supreme Court did this in Curtis when they determined the term physical force. And so they determined that violent felony, that physical force also meant violent force. We think this is instructive because we cannot overlook the fact that in interpreting the word distribution, we also need to keep in mind that Congress really was preventing or including serious drug offenses as ACCA predicates. And the least culpable conduct, though, here prohibited by the Virginia's offense is giving a friend a little bit of drugs as an accommodation. That just does not constitute distribution, and it does not rise to the level of a serious drug offense. Why doesn't that constitute distribution under Sarah Preston and USP White? Yes, Your Honor, White and Robinson both addressed Alabama statute prohibiting possession for other than personal use. And the difference here is the Alabama statute is quite different from the Virginia statute in that the Virginia statute has prohibits much broader swath of conduct than the Alabama statutes. And if you look at the Alabama cases interpreting the Alabama statute, they all involve commercial dealing. And there are even some distinctions, and we pointed out some of them drawn in our brief, where Alabama conduct that really didn't involve the commercial dealing or rise to a certain level wasn't prohibited under that statute. That is generally, I think, prosecuted under more of simple possession statute. Here, Virginia statute is very unique. No remuneration is required, but that's not the only feature of the Virginia statute. It also has this accommodation language. And the accommodation language, the Virginia Supreme Court has explained, was really designed to capture something less than a dealer, less than a pusher, less than somebody who's normally engaged in the drug traffic. And that's the Stillwell case from Virginia Supreme Court. So we know also from Virginia cases that it's something less than a dealer who gives away drugs for free at a party just to earn goodwill in hopes of future sales. But you're pointing to Virginia cases. So what about the Virginia Supreme Court in Wood v. Commonwealth explaining in the context of a different drug statute, but explaining the term distribution nonetheless, that it's a broad term that includes giving and selling? Yes, I believe that case. I think it predated the current Virginia statute. And I think what they were explaining was distribution. But we have give and sell. But what we also have in this accommodation provision is give and sell and distribute. Well, I'm sorry, we don't have sell in the accommodation provision. It's just give and distribute. But we also have this as an accommodation language. And that makes it qualitatively different from just giving. So you could get like the example of Hecox, that dealer gave drugs for free to people at a party. But he was not entitled to the accommodation offense. Because even though he gave him away for free, he was hoping for he expected future consideration in the terms of future sales. And so the the Virginia accommodation is really designed for people who have lot much less culpability than your typical dealer pusher or person who normally engages in the trafficking of drugs, it covers the two people sitting around sharing a personal use amount of drugs in their own home. And we submit that that's not serious enough. And that's not distribution, we need to look at the accommodation defense does not. It's it's a defense. It's not or it's not changing the the charge of distribution. Correct. And I and if I said a defense, I misspoke a little bit in that. I think that the sentencing is a sentencing factor that the for which the defendant bears the burden, right? It doesn't come in at the guilt phase. Correct. It comes in at the sentencing phase. But it is the source of the least culpable conduct that is prohibited under the statute, the Virginia, the offense, which is what we need to look at when we apply the categorical approach. So it does give us it does tell us what the least culpable conduct is. But in looking and looking at the guilt phase as well, the the jury instruction, the model jury instructions in Virginia, whether the person is charged with selling, giving or distributing, they are they the model jury instruction is the same and it refers to distributing. Yes, Your Honor, it does. And why are we not taking all of this information from Virginia, the Supreme Court and the model jury instructions and saying that, in fact, distribution does include giving? Because, well, I think that giving is different. It has to be different in the Virginia statute, even if the jury instructions only include the word distribution. And I don't know why the jury have decided to just include distribution and that not the additional verbs. But the fact is that the statute itself does have the additional verbs in it and we can't read them out because that would render them superfluous. So they have to be given some meaning. And, you know, there's also a difference between just giving and then they was giving as an accommodation, which is although it is a sentencing factor. You're right. It does not come in at the guilt phase. However, it does show us the least culpable conduct under the offense itself because this sentencing factor falls within the greater offense itself. But if you if someone gives if someone gives marijuana to someone else, even to their friend or to, you know, like you say, someone sitting around at home, aren't they at that point possessing the drug for more than personal use? No, your honor, we would it is we say it's more of more like a joint possession or a sharing of drugs. There's some some cases that have talked about this using a different definition of distribution, but we would look at. I think you need to look at the the welding case, which has an example where they say we need to look at the common and ordinary understanding of the term distribute. And if somebody goes up to the hamburger counter and orders two hamburgers and brings them back to one of their friends and gives it to their friend, that's not what we commonly think of as distribute. And when you also consider it in the context of distributing drugs, we think of wholesalers and traffickers and kingpins and retailers and street level hustlers and importers. We don't really think of the two people sitting around who are both users, who are friends, who don't change any money, who maybe one guy just ran out of his stash and the other guys lending him, giving him being generous and giving him some some drugs not to hook him and not to profit from that. Your honor, I see that my time is up and I reserve my time for rebuttal. Thank you, Miss Bailey. Miss Gershaw. Good morning, your honors, and may it please the court. Holly Gershaw on behalf of the United States. This court need not speculate as to what type of state drug offenses Congress deems officially serious to qualify as ACCA predicate offenses. It told us that a state drug offense is a serious drug offense if it is punishable by at least 10 years imprisonment and involves the manufacture, distribution, or possession with the intent to manufacture or distribute a controlled substance. No amount of policy talk can overcome this plain statutory language. And this court has already held in Hollis that distributing, selling, and giving involve distribution. It follows, therefore, that all the ways of violating Virginia's drug distribution statute, giving, selling, distributing, or possessing with the intent to, I'm sorry, the intent to sell, give, or distribute involve distribution or possession with the intent to distribute a controlled substance. Now, Stancil tries to distinguish Hollis by arguing that the Virginia statute reaches the social sharing of drugs. This court can reject that argument out of hand because Stancil doesn't say to any authority suggesting that Virginia's drug distribution statute has ever been applied to the social sharing among users. In white, this court, citing Moncrief, said that this court should not consider hypothetical scenarios when determining if a statute is categorically overbroad. So this court shouldn't even consider that argument here. But even if it does, Stancil fails to explain how the social sharing of drugs is any different than giving away drugs under Alabama's, under the Alabama statute that this qualifies as a serious drug offense. He points to Alabama drug distribution convictions that involve what he characterizes as the commercial sale of controlled substances by dealers, but the Virginia cases he cites also involve convictions for commercial sales of drugs. For example, Gardner involved the sale of LSD to an undercover agent, and Dunn involved the sale of meth and marijuana. Moreover, it is theoretically possible the defendant could violate both the Virginia statute by sharing drugs among friends. There's no basis for distinguishing Hollis. Simply put, there's no meaningful difference between Alabama and Virginia's drug statute, so Hollis controls. This court should look no further than Hollis to decide this case here, but to the extent the court has any questions about the remainder of the arguments, I would Every way of violating Virginia drug distribution statute involves distribution. Distribution of a controlled substance encompasses, as a matter of definition, any method of transferring a controlled substance. All of the ways of violating Virginia statute involve either the transfer of controlled substances or possession of those drugs with the intent to transfer them, and there is no that you can interpret the Virginia drug distribution statute to not involve distribution or possession with intent to distribute and be consistent with this court's precedent in Hollis and Robinson, and in fact what Stansel is asking this court to do is read language into the ACCA that simply does not exist. For these reasons and the reasons stated in our brief, we'd ask the court affirm Mr. Stansel's conviction or sentence. Thank you. Thank you. Ms. Bailey. Yes, your honors. If I may address a few of the government's arguments. Ms. Bailey, could you start with Hollis and how do you get past Hollis? I understand it involved Alabama statute, but the language that the government is citing, and I know I was on this case, the distribution need not involve an exchange for value, and it's talking about the federal statute. Yes, your honor, and I have two responses to that. First of all, we're not arguing that an exchange for value is the dividing line between a serious drug offense or distribution and something that is not a serious drug offense or distribution. The Virginia statute doesn't require remuneration. However, there's more to the Virginia statute than that. It also requires, in addition to requiring no intent to profit from any consideration received or expected, it also requires no intent to induce use, addiction, or dependence, and it requires an isn't defined. However, if you look at dictionary definitions, it's an act of generosity or an act of kindness, or it's just an assistance idea. So to the extent that Hollis said that no remuneration requirement is necessary to find a distribution, we don't disagree with that. We just simply say that the Virginia statute is broader than just that. Also, we know that when the court said that a distribution or an exchange for value was not required to be a distribution, the court relied on the case of Bynum. And in Bynum, the Eighth Circuit recognized that the word distribution was designed to capture, as it's used in the ACCA specifically, the Bynum court recognized that the word distribution was designed to capture those individuals who enter the dangerous drug marketplace. And the reason is because Congress wanted to punish more harshly with the ACCA because of the increased danger that these people pose when they possess guns. There's just inherently a different danger possessed when people are out in the marketplace buying and selling, or even if there's no exchange for value, they're just participating in the illegal drug world, as opposed to what Virginia statute prohibits, which is as broad as two people sitting around, which might otherwise be punished by joint possession. The government states that we are relying on hypothetical, or it suggests that we are relying on a hypothetical scenario, but that's not the case. What we are relying on to find the least provision itself. As I stated, that's where we find least culpable conduct. Has anyone ever been prosecuted under the social sharing theory that you outline here? In Virginia? Virginia. Not that I am aware of, Your Honor. There are cases in Virginia where the accommodation defense is rejected. For example, I mentioned the Hecox case earlier. I'm not sure I mentioned it by name, but the Hecox case is where a dealer gives away drugs for free. He said, I'm entitled to the accommodation defense. And the court said, no, you're not, because you are a dealer, just because you're giving them away from free and you're friends with these people doesn't mean you fit under this special accommodation defense. So he's not the least culpable conduct. The Gardner case from the Supreme Court is really, from the Virginia Supreme Court, is really the only case where an accommodation defense wasn't given at trial, and the defendant appealed, and he was entitled to it. And that case is where someone, a young 17-year-old, befriended an undercover cop and informant, and he provided the introduction to someone. He never handled the money, he never did anything, but he was kind of the go-between. But we would submit that that's not even the least culpable conduct, because if you look directly at the statutory language, we see that it's accommodation. And the court in Virginia, the Stilwell court in Virginia Supreme Court, stated that the whole purpose of the accommodation provision was not to punish, was in recognition that not every occasion where drugs are given is it a dealer, a pusher, or somebody engaged in drug traffic. And we note that when there is not a case on pen, this court has recognized that you can rely on the statutory language itself. And I would cite the case of Bortzakis versus the United States Attorney General. It's not cited in our briefs, but it's at 940 F3rd 616, and the pen side is 620, and it's from the 11th It supports our argument that statutory language itself can create the realistic possibility that a state would apply the statute to conduct beyond that that is prescribed by the federal act. The ACCA imposes one of the harshest enhancements in federal sentencing, a 15-year mandatory sentence for possessing a firearm after three serious drug offenses or violent felonies or both. Congress did not intend to impose this harsh punishment based on the situation where two together in the privacy of their own home, not dealing or pushing, but just simply accommodating a friend. That's what the Virginia offense prohibits, and this court should not be the first to hold that this conduct is a serious drug offense under the ACCA. Thank you, Your Honors. Thanks to both of you. We have your case under submission.